IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ROBERT CHAMBERS**                                                                 **PLAINTIFF**

V.                                                                  CAUSE NO. 3:20-CV-58-CWR-LGI

**CITY OF JACKSON, MISSISSIPPI;**                                               **DEFENDANTS**
**OFFICER KENNETH SHORT,**
**individually and in his official capacity;**
**JOHN and JANE DOES 1-10**

## ORDER

Before the Court is defendant Kenneth Short's motion for summary judgment. Docket No. 38. Upon review, the motion will be denied.

**I.    Factual and Procedural History**

On January 30, 2020, Chambers filed the present action against the City of Jackson, Mississippi, Officer Kenneth Short, and John and Jane Does 1-10. Chambers alleges a Fourth Amendment violation under 42 U.S.C. § 1983, negligence, and four intentional torts.

The following allegations are drawn from the parties' briefing.

According to Chambers, on May 4, 2017, he and his friend Anthony Thornton "were hanging out" at the Citgo gas station on Clinton Boulevard in Jackson, Mississippi. Docket No. 45 at 1. (Thornton explained that they are friends with the owners.) While there, Jackson Police Department (JPD) Officer Kenneth Short and several other officers arrived. Officer Short informed Chambers that he needed to leave, to which Chambers replied, "yes ma'am," not realizing that Officer Short was a man. Thornton explains that Officer Short has a "higher-pitched, feminine sounding voice" and was approaching Chambers from behind, so Chambers had not seen Officer Short—he had only heard him. Docket No. 44-1. Chambers and Thornton believe that this angered Officer Short. Officer Short told them to leave again. They did.

Here the accounts diverge substantially.

Chambers states that Thornton, who had ridden with him to the Citgo, walked off, as both men lived only half a mile away. Chambers says that he drove off. Thornton says the officers were trailing Chambers, and by the time Thornton reached Queen Anne Lane, the street where both men live, he could see several JPD cars parked in front of Chambers' home located at the end of the block. Thornton walked to the commotion. Neighbors Audrey and Gregory Magee had come out of their homes and were watching too. Chambers was sitting in the driver's seat of his parked truck, and Officer Short was standing outside the driver's seat. Then, according to Chambers, Thornton, and the Magees, Officer Short attacked. Thornton swore to the following account:

> I saw the officer I now know as Kenneth Short open the door and reach in and grab Robert. Officer Short snatched Robert out of the truck and threw Robert to the ground. Officer Short literally had Robert's body in the air and slammed him to the ground. He threw Robert down like he was a piece of trash.

Docket No. 46-1.

Mrs. Magee attests that Chambers yelled out in pain as he hit the concrete. Docket No. 46-2. Chambers was handcuffed while on the ground in front of his driveway. Then, as Mr. Magee attests, the officers all huddled at the back of Chambers' car, "to come [up] with a story about what happened." Docket No. 46-3. Eventually Officer Short placed Chambers in the backseat of one of the patrol cars. Later, the officers called an ambulance for Chambers.

Chambers, who is in his 70s, suffered a broken femur. Docket No. 51-1. He states that since he was slammed to the ground by Officer Short, he has been unable to work, to care for his home, or walk without the assistance of a walker.

According to the City and Officer Short, Chambers and Thornton were drinking alcohol and smoking marijuana at the Citgo, and Chambers was "heavily intoxicated." Docket No. 38-1. The officers would not allow the men to drive home, so both men departed on foot, assuring the

2

officers that they would just walk home. Officer Short drove off and continued his patrol. Minutes later though, Officer Short claims he spotted Chambers driving. Officer Short followed Chambers to Queen Ann Lane, where Short says, Chambers got out of the vehicle and ran, though immediately fell on the ground "near the driver side door . . . ." *Id.* Officer Short arrested him and called for a DUI officer. While the DUI officer was in route, Chambers complained of leg pain, but he refused medical assistance, recounts Officer Short. Chambers continued to complain of leg pain, and upon arriving to Precinct 4, an ambulance was called. Officer Short went to the University of Mississippi Medical Center, where Chambers was taken, and issued him citations for (i) failure to yield for blue lights and sirens; (ii) driving with an expired or no driver's license; (iii) driving on the wrong side of the road; and (iv) no insurance. Officer Short claims that as he was leaving, Chambers stated "I'm sorry man. I should have listened to you. I shouldn't have done that. I'm sorry." *Id.*

No breathalyzer test was conducted, because as Officer Short understands it, breathalyzer tests are not performed when someone is in pain. *Id.* Chambers' medical record states only that his alcohol level was "somewhat elevated." Docket No. 51-1.[1] There is no body camera or dash cam footage and Chambers accuses the City of ignoring his document preservation requests.

**II.     Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly

---

[1] Chambers' medical record also states that Chambers was "involved in an altercation with police on day of admission where he states he was pushed to the ground." Docket No. 51-1. Officer Short urges this as a third version of the events, but the parties have not expounded on its significance, if any.

supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

### III. Discussion[2]

Officer Short argues that he is entitled to qualified immunity because there was no excessive force. According to Officer Short, he merely cuffed Chambers after Chambers fell. Docket No. 39 at 6. Alternatively, Officer Short argues that even if he threw Chambers to the ground, his actions were reasonable because he had told Chambers not to drive and any force was incidental to a lawful arrest. *Id.* at 7. This, however, does not actually reflect Chambers' account of the events. Specifically, Chambers claims that he was allowed to drive away.

Indeed, Officer Short is a bit fast and loose as to which facts are or are not in dispute. For example, Officer Short lists seven "undisputed facts," like "Chambers was visibly intoxicated," "Short told Chambers that he could not drive," and "medical records show that Chambers did not have any bruises or contusions or other injury that would be consistent with him being picked up and body slammed." But these facts are indeed disputed. As Short acknowledges, there was no

---

[2] Chambers has voluntarily dismissed his state-law claims against Officer Kenneth Short and accordingly, the Court need not address Short's arguments under the Mississippi Tort Claims Act. Chambers' state law claims against Short are hereby DISMISSED. *See* Docket No. 45 at 5 n.25 ("The Plaintiff's state law claims are indeed precluded as described by Short, and he abandons them.").

breathalyzer test. Chambers' medical record states only that "[a]lcohol level on arrival was taken, which was somewhat elevated at 136." Docket No. 44-1 at 2. The medical record does not document any other injuries, but it also does not express an opinion as to whether Chambers' injuries are consistent with him being picked up and body slammed.

At this stage, the Court must take Chambers' account as true to the extent that it is more than mere "conclusory allegations" and "unsubstantiated assertions." *See Wallace*, 80 F.3d at 1047. "It is not the function of the trial judge, in ruling on a motion for summary judgment, to weigh evidence, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987). "Those are functions for the trier of fact." *Id.*; *see also Chacon v. York*, 434 F. App'x. 330, 332-33 (5th Cir. 2011) (reversing district court's grant of summary judgment in § 1983 excessive force action where district court improperly credited deputy's version of events).

Chambers' account exceeds the requisite standard. He provides three affidavits from neighbors that witnessed the event. All three attest that Officer Short opened Chambers' car door and threw him to the ground. Two remark that Chambers yelled out in pain upon hitting the ground. Audrey Magee states that the officers left Chambers cuffed and sprawled on the ground while they had a conversation at the back of car. Only after the officers finished their conversation did they pick Chambers up from the ground.

Under the doctrine of qualified immunity, the Court first considers whether Chambers has presented evidence of a violation of a constitutional right. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). If he has, the Court then considers "whether [Officer Short's] conduct was objectively reasonable in light of clearly established law at the time the challenged conduct occurred." *Id.* The second inquiry is often

bifurcated into (i) "whether the allegedly violated constitutional rights *were clearly established at the time of the incident*; and, if so," (ii) "whether the conduct of the defendant[] was *objectively unreasonable* in light of that then clearly established law." *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002) (quoting *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 326 (5th Cir. 1998)) (first emphasis in original).

First up is "violation of a constitutional right." *Tarver*, 410 F.3d at 750. Chambers argues that Officer Short dragging him from his car and slamming him to the ground constitutes excessive force. To establish his excessive force claim, Chambers must show: (1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Id.* at 751. It is undisputed that Chambers suffered a broken femur, thus, element one is satisfied. *See* Docket No. 44-1. Element two is also satisfied. Chambers' broken femur resulted from being dragged from his car and slammed to the ground, rather than from a preexisting condition or an action of a third party. *See Tarver,* 410 F.3d at 752.

Viewing the facts in Chambers' favor, per the summary judgment standard, element three is also satisfied. The underlying offenses, if any, were mere traffic violations. Chambers also was fully compliant with the officers' requests and was not resisting arrest or attempting to flee. According to the affidavits of three witnesses, Chambers did not pose a threat to anyone, as he is in his 70s and was surrounded by no less than three to four cars' worth of JPD officers. Under these facts, a jury could reasonably find that the degree of force that Short used was plainly unreasonable. Thus, Chambers has articulated his excessive force claim.

Now onto qualified immunity.

In considering whether Short's conduct was objectively unreasonable, the Court must "pay 'careful attention to the facts and circumstances,'. . .'including the severity of the crime at issue,

6

whether the suspect posed an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'" *Tarver*, 410 F.3d at 753 (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998)); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989). Again, under Chambers' version of events, he was stopped for at most minor traffic violations and did not pose a threat to the safety of the officers or others. Chambers neither resisted nor attempted to flee.

For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Tarver*, 410 F.3d at 753 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). Chambers had a clearly established "constitutional right to be free from excessive force during an investigatory stop or arrest." *Id.* at 753-54. It has been clearly established that the amount of force that an officer can use "depends on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee.'" *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)). As discussed above, these factors counsel in favor of finding that Chambers' right was clearly established. Accordingly, Officer Short is not entitled to qualified immunity under the summary judgment standard.

The denial of qualified immunity here is well-supported in case law. In *Deville*, for example, a woman was driving with her granddaughter in Monroe, Louisiana. *Id.* at 161. She was pulled over because the officer claimed that she was driving 10 miles over the speed limit. *Id.* She responded that that was "bullshit" because she had her cruise control set to the speed limit. *Id.* The officer asked her to step out of the car, and she refused. *Id.* The officer threatened to call child services to pick up the woman's two-year-old granddaughter. *Id.* She again refused. *Id.* Then, she

7

rolled up her window and called her husband, daughter-in-law, and son. *Id.* Another officer arrived on the scene, approached the woman, and told her to roll down the window or he'd break it. *Id.* at 162. She did not, replying that she was waiting for her husband to arrive. *Id.* The officer hit the window with a flashlight, so the woman began to roll it down, but she did not get the chance. *Id.* The officer broke the window, opened the door, and slammed her against the car. *Id.* Deville visited a doctor the next day who reported contusions to both wrists, neuropathy of her hands, right shoulder strain, left shoulder bruising, and multiple cuts caused by the broken glass. *Id.* at 168. The Fifth Circuit held that the officers were not entitled to qualified immunity as to this excessive force claim. *Id.* at 169.

The outcome was the same in *Trammell v. Fruge*. There, officers arrived at the scene after an intoxicated motorist had allegedly crashed his motorcycle. 868 F.3d 332, 336 (5th. Cir. 2017). The motorist stated that he just parked it, but he was visibly intoxicated and "swaying." *Id.* at 337, 340. In arresting the motorist for public intoxication, the motorist pulled his arm away, telling officers "that it hurt and not to grab him there." *Id.* at 337. One officer executed a knee strike on the motorist's thigh, another put the man in a headlock, and a third officer pulled the motorist to the ground. *Id.* Again, the Fifth Circuit held that the officers were not entitled to qualified immunity. *Id.* at 343-43.

The same is true here. Fifth Circuit precedent puts the present case squarely in the realm of cases that are inappropriate for resolution through summary judgment. Chambers offers summary judgment evidence sufficient to create a genuine fact issue as to whether Short's conduct in pulling Chambers from his car and slamming him on the ground was objectively unreasonable in light of clearly established law. The motion for summary judgment as to Officer Kenneth Short is denied.

8

IV.     **Conclusion**

Kenneth Short's motion for summary judgment is DENIED.

**SO ORDERED**, this the 18th day of May, 2022.

s/ Carlton W. Reeves<br>UNITED STATES DISTRICT JUDGE