IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ROBERT CHAMBERS**                                                                                 **PLAINTIFF**

**V.**                               **CAUSE NO. 3:20-CV-58-CWR-LGI**

**CITY OF JACKSON, MISSISSIPPI;**                            **DEFENDANTS**
**OFFICER KENNETH SHORT,**
**individually and in his official capacity;**
**JOHN and JANE DOES 1-10**

## ORDER

Before the Court is defendant City of Jackson, Mississippi's motion for summary judgment. Docket No. 40. Upon review, the motion will be granted.

**I.**      **Factual and Procedural History**

On January 30, 2020, Chambers filed the present action against the City of Jackson, Mississippi, Officer Kenneth Short, and John and Jane Does 1-10. Chambers alleges a Fourth Amendment violation under 42 U.S.C. § 1983, negligence, and four intentional torts.

The following allegations are drawn from the parties' briefing.

According to Chambers, on May 4, 2017, he and his friend Anthony Thornton "were hanging out" at the Citgo gas station on Clinton Boulevard in Jackson, Mississippi. Docket No. 45 at 1. (Thornton explained that they are friends with the owners.) While there, Jackson Police Department (JPD) Officer Kenneth Short and several other officers arrived. Officer Short informed Chambers that he needed to leave, to which Chambers replied, "yes ma'am," not realizing that Officer Short was a man. According to Thornton, Officer Short has a "higher-pitched, feminine sounding voice" and was approaching Chambers from behind, so Chambers had not seen Officer Short—he had only heard him. Docket No. 44-1. Chambers and Thornton believe that this angered Officer Short. Officer Short told them to leave again. They did.

Here the accounts diverge substantially.

Chambers states that Thornton, who had ridden with him to the Citgo, walked off, as both men lived only half a mile away. Chambers says that he drove off. Thornton says the officers were trailing Chambers. By the time Thornton reached Queen Anne Lane, the street where both men live, he could see several JPD cars parked in front of Chambers' home located at the end of the block. Thornton walked to the commotion. Neighbors Audrey and Gregory Magee had come out of their homes and were watching too.

Chambers was sitting in the driver's seat of his parked truck, and Officer Short was standing by the driver's seat. Then, according to Chambers, Thornton, and the Magees, Officer Short attacked. Thornton swore to the following account:

> I saw the officer I now know as Kenneth Short open the door and reach in and grab Robert. Officer Short snatched Robert out of the truck and threw Robert to the ground. Officer Short literally had Robert's body in the air and slammed him to the ground. He threw Robert down like he was a piece of trash.

Docket No. 46-1.

Mrs. Magee attests that Chambers yelled out in pain as he hit the concrete. Docket No. 46-2. Chambers was handcuffed while on the ground in front of his driveway. Then, as Mr. Magee attests, the officers huddled at the back of Chambers' car, "to come [up] with a story about what happened." Docket No. 46-3. Eventually Officer Short placed Chambers in the backseat of one of the patrol cars. Later, the officers called an ambulance for Chambers.

Chambers, who is in his 70s, suffered a broken femur. Docket No. 51-1. He states that since he was slammed to the ground by Officer Short, he has been unable to work, to care for his home, or walk without the assistance of a walker.

According to the City and Officer Short, Chambers and Thornton were drinking alcohol and smoking marijuana at the Citgo, and Chambers was "heavily intoxicated." Docket No. 38-1.

2

The officers would not allow the men to drive home, so both men departed on foot, assuring the officers that they would just walk home. Officer Short drove off and continued his patrol. Minutes later, Officer Short claims he spotted Chambers driving. Officer Short followed Chambers to Queen Ann Lane, where according to Short, Chambers got out of the vehicle and ran, though immediately fell on the ground "near the driver side door . . . ." *Id.*

Officer Short arrested him and called for a DUI officer. While the DUI officer was in route, Chambers complained of leg pain, but he refused medical assistance, recounts Officer Short. Chambers continued to complain of leg pain, and upon arriving to Precinct 4, an ambulance was called. Officer Short went to the University of Mississippi Medical Center, where Chambers was taken, and issued him citations for (i) failure to yield for blue lights and sirens; (ii) driving with an expired or no driver's license; (iii) driving on the wrong side of the road; and (iv) no insurance. Officer Short claims that as he was leaving, Chambers stated "I'm sorry man. I should have listened to you. I shouldn't have done that. I'm sorry." *Id.*

No breathalyzer test was conducted, because as Officer Short understands it, breathalyzer tests are not performed when someone is in pain. *Id.* Chambers' medical record states only that his alcohol level was "somewhat elevated." Docket No. 51-1.[1] There is no body camera or dash cam footage; Chambers accuses the City of ignoring its document preservation requests.

On May 18, 2022, the Court denied Officer Short's motion for summary judgment on the basis of qualified immunity. Docket No. 58. That Order is currently on appeal to the Fifth Circuit. *See* Docket No. 63. Shortly after Officer Short submitted his motion for summary judgement, the

---

[1] Chambers' medical record also states that Chambers was "involved in an altercation with police on day of admission where he states he was pushed to the ground." Docket No. 51-1. Officer Short urges this as a third version of the events, but the parties have not expounded on its significance, if any.

3

City followed suit. The Court then requested supplemental briefing on the issue of evidence spoliation and held a status conference on August 29, 2022.

The City's motion is now ripe for the Court's review.

## II.     Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (quotation marks and citations omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

As to spoliation, courts can address these allegations through

> the inherent power to regulate the litigation process if the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct. If a federal statute or rule can adequately sanction the conduct, the court should apply the statute or rule, rather than apply the more flexible or expansive inherent powers of the court. If the court relies on its inherent powers, exercising such powers must be done narrowly, as inherent powers are shielded from direct democratic controls.

*Peals v. QuikTrip Corp.*, No. 4:20-CV-22-KPJ, 2021 U.S. Dist. LEXIS 96585, at *10 (E.D. Tex. May 21, 2021) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991)).

**III.    Discussion**[2]

Under § 1983, a municipality cannot be found liable for the actions of its subordinates based on theories of *respondeat superior* or vicarious liability. *Shumpert v City of Tupelo*, 905 F.3d 310, 316-17 (5th Cir. 2018). "To establish municipal liability pursuant to § 1983, a plaintiff must demonstrate three elements: 'a policymaker; an official policy [or custom]; and a violation of constitutional rights whose moving force is the policy or custom.'" *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

> An official policy must be either unconstitutional or have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result. Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.

*Id.* (internal quotations and citations omitted).

Chambers argues that the City failed to conduct an investigation into the arrest and his injury, and also failed to preserve evidence despite being sent a formal preservation request. In support, Chambers cites to the City's responses to his interrogatories, wherein the City responded "none known," to a request to identify anyone that conducted an investigation. Docket No. 47 at 4. The City also responded "none known" to a request to produce any communications regarding Chambers, adding that "911 tapes and data are generally stored only for up to one year due to data storage limitations . . . ." *Id.* at 5. Thus, according to Chambers, the preservation request sent to

---

[2] Plaintiff has voluntarily dismissed his state law claims against the City, and accordingly, the Court need not address the City's arguments under the Mississippi Tort Claims Act. Chambers' state law claims against the City are hereby DISMISSED. *See* Docket No. 47 at 8 n.20 ("The Plaintiff abandons his state law claims.").

the former Police Chief Anthony Moore on February 23, 2018, less than a year after the incident, went ignored. *See* Docket No. 46-7.

Chambers argues that these failures constitute a valid basis for municipal liability under the theory of ratification. Under the ratification theory of municipal liability, "when a subordinate's decision is subject to review by the municipality's authorized policymakers," and the "authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). In other words, the municipal's authority measures the subordinate's conduct, and certifies that it is in conformance with its policies. *See id.*

In *Grandstaff v. City of Borger*, upon which Chambers relies, the Fifth Circuit held that "[a]n injured plaintiff is not likely to document proof of a policy or disposition, either of the policymaker or throughout the police force, that disregards human life and safety. The disposition must be inferred circumstantially from conduct of the officers and of the policymaker." 767 F.2d 161, 171 (5th Cir. 1985). And where there "were no reprimands, discharges, and no admissions of error," "the jury was entitled conclude that [the conduct] was accepted as the way things are done and have been done." *Id.*

Chambers argues that, like *Grandstaff,* the City's subsequent inaction—specifically failing to investigate and preserve documents—shows that the City has ratified Officer Short's conduct.

*Grandstaff*, however, dealt with incredible facts. There, without warning, officers opened fire on a car and killed an innocent man. The *Grandstaff* panel rightfully described the officers' conduct as "dangerous recklessness" and "incompetent and catastrophic . . . ." *Id.*

Since *Grandstaff*, moreover, the Fifth Circuit has limited the theory to only "extreme factual situations." *Peterson v. City of Fort Worth, Texas,* 588 F.3d 838, 848 (5th Cir. 2009)).

Thus, the question is whether "the subordinate's actions are sufficiently extreme —for instance, an obvious violation of clearly established law." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009). Without the requisite extremity, the "policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *Id*.

*Peterson v. City of Fort Worth, Texas* illustrates the point. There, a man sleeping in his car was dragged out of the car by officers and thrown to the ground. 588 F.3d 838, 843 (5th Cir. 2009). Once on the ground, officers cuffed him, pulled him up to his feet by the chain of the handcuffs, slammed him into his car, and then kneed him in the thighs. *Id.* The blow resulted in a ruptured femoral artery and required two surgeries and a two-week hospital stay. *Id.* Still, the *Peterson* panel "quickly conclude[d]" that Fifth Circuit precedent "forecloses ratification liability," *id.* at 848, even though the Police Chief in *Peterson* determined after an investigation that the officers were complying with policies.

Taking Chambers' account as true, as the Court must at this stage, in many respects the conduct is similar to *Peterson*. Chambers, like Peterson, was sitting in his car. Neither Chambers nor Peterson were resisting arrest—indeed, they were compliant. Even so, they were pulled from their cars for seemingly no reason and thrown to the ground, violently. And, in both cases, there are factors which make the conduct particularly disturbing: Chambers is in his 70s; Peterson was asleep.

In some ways, though, the facts here are not as extreme as those in *Peterson*. For example, Peterson, after being thrown to the ground, was yanked to his feet and kneed. Chambers did not suffer any subsequent violence after being thrown to the ground. The Police Chief in *Peterson*

7

determined after an investigation that the officers were complying with policies. Still, the *Peterson* panel found that there was no municipal liability.

The Court acknowledges that *Peterson* and this case are not identical; arguably the severity of Chambers' injury differs from Peterson's. But that difference is insufficient to establish municipal liability. In *Snyder v. Trepagnier*, Snyder was shot in the back while fleeing on foot from police following a high-speed chase, paralyzing him from the waist down. 142 F.3d 791, 794 (5th Cir. 1998). The *Snyder* panel held that the case "hardly rises to the level of the extraordinary factual circumstances necessary to support municipal liability under the ratification theory. *Id.* at 798 (citing *Grandstaff*, 767 F.2d at 171).

The Court could go on detailing brutal illustrations, but it won't. *See Camacho v. City of El Paso, Texas*, No. EP15-CV-318-PRM-RFC, 2016 WL 3519662 (W.D. Tex. June 22, 2016) (collecting cases). The facts in this case are not "sufficiently extreme" to establish liability against the City. Accordingly, Chambers' *Monell* claim is dismissed, and as there are no other remaining claims against the City, the City is dismissed as a party.

Now the Court turns to Chambers' spoliation allegation. At the status conference on this issue, the parties set forth the facts. The City represented that it simply does not know what efforts, if any, were taken to adhere to the preservation request and it could not determine whether the data sought ever existed. Although it admits that some of the data sought, such as radio frequency tapes, likely existed, the City can no longer locate them. The City contends that other data sought, such as dash cam or body camera footage, likely never existed because that technology was not widely used at the time the incident took place. Chambers argues that the radio frequency tapes and computer-aided dispatch records, particularly those reflecting communications between officers are critical because the parties' accounts of the incident differ drastically, including how many

8

officers were at the scene, and Chambers suggests that the officers plotted to cover-up Officer Short's conduct. The tapes likely confirm or contradict these disputes, Chambers contends.

Because the data requested encompasses electronically stored information ("ESI") as well as information stored in other manners, the Court relies on its inherent power and Federal Rule of Civil Procedure 37(e), which governs a party's duty to preserve ESI. In relevant part, Fed. R. Civ. P. 37(e) provides that,

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice[.]

"The four predicate elements are: (1) the ESI should have been preserved; (2) loss of that ESI; (3) the lost ESI resulted from a party's failure to take reasonable steps to preserve it; and (4) the lost ESI cannot be restored or replaced through additional discovery." *Grant v. Gusman*, No. 17-2797, 2020 U.S. Dist. LEXIS 64691, 2020 WL 1864857, at *8 (E.D. La. Apr. 13, 2020).

Through its inherent powers or Rule 37, courts "may [] impose monetary sanctions for spoliation and other discovery misconduct." *Phx. Four, Inc. v. Strategic Res. Corp.*, No. 05-CIV-4837(HB), 2006 U.S. Dist. LEXIS 32211, at *27 (S.D.N.Y. May 22, 2006). "When evidence has been destroyed, monetary sanctions are particularly appropriate when a court has no way of knowing what, if any, value the destroyed evidence has to the movant's case." *Tango Transp., LLC v. Transp. Int'l Pool, Inc.*, No. 5:08-CV-559, 2009 U.S. Dist. LEXIS 93930, at *17 (W.D. La. Oct. 7, 2009) (citing *United States v. Philip Morris USA, Inc.*, 327 F. Supp. 2d 21, 26 (D.D.C. 2004)).

The Court agrees that monetary sanctions are appropriate here. The facts are not in dispute. Chambers sent a preservation request to the Chief of JPD on February 23, 2018, nine months after the incident. In April 2018, he sent a notice under the Mississippi Tort Claims Act. Then on January

30, 2020, after criminal charges against Chambers were dismissed, Chambers filed the present lawsuit.

During the course of discovery, Chambers requested the City,

> produce a copy of all communications, whether generated or stored in hard copy or electronically, sent or received by or any or any of Defendant's representatives, agents, officers, or employees regarding this Plaintiff. This request specifically includes, but is not limited to, all radio frequency tapes, mobile data[,] terminal data, mobile digital computer data, computer-assisted dispatch data, incident recall printouts, video recordings, and audio recordings, electronic mail, and instant messages.

Docket No. 46-5 at 5. March 1, 2021, the City responded "NONE KNOWN. (911 tapes and data are generally stored only for up to one year due to data storage limitations also, at the time of the incident, JPD officers were not equipped with body cams)." *Id.*

Chambers insisted the City continue its search, citing his 2018 preservation request, and following up in March, June, and December 2021. To date, the City admits that some of the discovery sought likely existed but that it no longer has it. What, if any, impact this information would have had upon the plaintiff's *Monell* claims asserted against the City had it been preserved remains unclear. The City simply failed to preserve the evidence, thus some monetary sanction is warranted here. *See Tango Transp.*, 2009 U.S. Dist. LEXIS 93930, at *17.

The Court awards attorneys' fees for the cost of Chambers' counsel's supplemental brief and appearance at the status conference on August 29, 2022 as a sanction for the City's failure to institute a litigation hold and preserve discovery documents. For the express purpose of avoiding further litigation on this discrete issue, $2,500 in attorneys' fees and costs is an appropriate award amount.

## IV.     Conclusion

The City's motion for summary judgment is GRANTED. The Court awards $2,500 in attorneys' fees to Chambers. The above amount is to be paid by the City to Chambers within 30 days of the date of this order.

**SO ORDERED**, this the 2nd day of September, 2022.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
